Good morning, Your Honor, and may it please the Court. My name is Court Lillanen, and I represent the appellant, Miguel Ilaw. You are indeed correct, Your Honor. I'd like to reserve just a minute for rebuttal, if I may. Your Honors, the District Court below made two errors when it dismissed Mr. Ilaw's second amended complaint. First, the District Court erred when it concluded that Mr. Ilaw could not sue and assert Title VII claims against Daughters of Charity because he named only O'Connor Hospital on his charge of discrimination that issued from the EEOC. Now, that decision was an error because, in fact, Daughters was implicated in the conduct that is described directly on the charge, and there's a wealth of allegations in the complaint that establish that Daughters was fairly on notice of these Title VII claims. Second, Your Honor, the District Court erred when it concluded that Mr. Ilaw's Title VII claims were time-barred, and the District Court reached that decision disregarding the evidence in the complaint that Mr. Ilaw's former attorney committed professional misconduct that caused the untimely assertion of those Title VII claims. I'll begin with the equitable tolling issue, Your Honors, and then move briefly, if time permits, to the exhaustion issue. Your Honors, this Court has long held that where extraordinary circumstances stand in the way of a party attempting to assert their rights under Title VII, that equitable tolling may be available in those circumstances. And, again, this Court has long held that egregious professional misconduct by a retained attorney can constitute exactly the type of misconduct or egregious misconduct. And your theory for why there was egregious misconduct, and I'll try to summarize it the way I'm thinking of it, and then you tell me if I'm wrong, it's because Mr. Ilaw's lawyer acted in direct contradiction to instructions that Mr. Ilaw had given the lawyer? That's correct, Your Honor. Okay. And so what were the instructions and show – if it's this e-mail, I'm going to need help, but if there's something more, maybe you can point me to it. I understand, Your Honor, and let me clarify that certainly that direct contravention is the most compelling evidence here of a disloyalty, of egregious misconduct. But there are other aspects in the record. But to Your Honor's point, if – and there's more than the e-mail. So, for example, page 85 of the excerpts of record, which is an excerpt from the complaint, establishes that at Mr. Ilaw's very first meeting with this attorney, he emphasized his claims arising under Title VII. And I've emphasized to the Court that this meeting was held just days after the notice of a right to sue issued from the EEOC. So Mr. Ilaw sought out assistance from a counsel, held a meeting right away, and emphasized those claims under Title VII. That's in the complaint. Your Honor, the next page of the complaint, page 86 of the excerpts, is the e-mail. It describes that e-mail that Your Honor is referencing. And there's an excerpt, as you say, on page 235 as well. The e-mail is in its entirety. Now, this e-mail is entirely consistent, excuse me, with what Mr. Ilaw has alleged, that he directed his attorney to file timely Title VII claims, but then deferred to the attorney's judgment about what form to assert those claims in. If you read the e-mail, it doesn't say, assert Title VII claims in Federal court or some type of State claims in State court. In fact, Title VII isn't mentioned at all. It just seeks clarification on the form in which his suit would proceed. Help me understand the relationship between the State claim, discrimination claims that were brought, and the Title VII claim that was not brought in State court. What additional claim or evidence or what additional thing would the Title VII claim have added as a practical matter to the State claim? Because State law is pretty favorable. Indeed, it is, Your Honor. And in large part, you're absolutely correct that the State claims that were asserted overlap with the Title VII claims in a substantive basis. The prejudice, if I may, in this case, is that Mr. Ilaw made an instruction about Title VII. That mattered to him. He emphasized Title VII. And I understand that as lawyers it's tempting to second-guess or say, well, the claims that were asserted are essentially the same or have the same type of rights. But there's value to granting someone the discretion to choose the nature of their case, to be master of their complaint. And Mr. Ilaw made that instruction. Kennedy, based on what I have here in front of me, how egregious the conduct of his first lawyer was, he's got a problem, and you've got an answer to it, but he's got a problem in filing a Title VII case in that the exhaustion may not have gone to all the defendants he wants to bring suit against. So if all your filing is under State law, you're avoiding having to deal with that question. And he ends up getting an $85,000 settlement in State court, which he repudiates, but $85,000 settlement based on this case doesn't strike me as egregious malpractice. Well, Your Honor, I think in some ways if you look at the fact that Mr. Ilaw did repudiate that settlement agreement after realizing the terms, and if you look at the e-mail he sent to his counsel after revoking that agreement where he said, Title VII is what we agreed, and he walked away from $85,000 because Title VII is not what he got. So there's a thread linking the very start of this representation to what he got and to where he walked away at the end, which is Title VII. And those claims were not asserted. And it's a bedrock principle of professional obligations that an attorney needs to abide by a client's instructions about a core case issue. It's not for the attorney to second-guess or decide the State claims are better or would somehow have a more favorable result. The question I'm about to ask, I understand, is not strictly relevant to the tolling question, but I understand that he filed a suit in State court after the non-prejudicial dismissal, and I understand from a footnote in the red brief that that suit has been resolved. Now, if we were to hold that his Title VII claim is still timely because of tolling, and if we were to get past the exhaustion issue, is there any hope, meaning what happens with respect to issue and claim preclusion coming out of that State law judgment, State court judgment? Your Honor, and again, understanding that I don't represent him in that second action, and so the facts are not directly at my fingertips, it's my understanding that there is some dissimilarities in the claims asserted or the parties that are named, and so there's no reason to believe, as a matter of fact, that there would be an issue of claim preclusion or res judicata if this case were remanded. Okay. And I can ask the other side, because they're probably more directly involved in litigation. For example, has there been an appeal? We know that California has a weird system, so there's no preclusive effect until the appeals have been disposed of, so maybe there's no, you know, that's okay. Your Honor makes some very good points, and I'll leave it to my opposing counsel to take those up. Again, Your Honors, I would only add that there's other aspects of the complaint that establish that the former attorneys ignoring the instruction to assert Title VII claims wasn't an isolated incidence, it wasn't an oversight. There were examples in the complaint where Mr. Ila wanted, for example, aggressive discovery. He insisted on a jury trial on his claims, and the attorney went ahead and negotiated a discovery stay. Can I ask? I actually don't think that ends up being relevant to the equitable tolling of the statute of limitations, though. But when did your client become aware that the State court complaint only contained State law claims? Your Honor, the record doesn't reveal. It's not in the complaint. Isn't that a critical piece of information we would need to have before us to reverse the district court? Not necessarily, Your Honor. I think there's an inference to be drawn from the e-mail terminating the employee's representation, where he noted that Title VII is what we agreed, that you can draw an inference in Mr. Ila's favor, as this Court should do on a motion to dismiss, and conclude that he discovered the omission of those Title VII claims at some point coincident with his termination of that former attorney. But, you know, for equitable tolling, he has the burden of alleging facts that establish his entitlement to that. And so it just seems like, I mean, you know, he was proceeding pro se. You've got to give him some leeway there. But, I don't know, it just seems like a big hole, because obviously, if he became aware early on that the State court complaint, you know, the lawyer hadn't followed his instructions, it seems like there was more he could have done to be diligent in asserting his rights under Title VII, right? I understand, Your Honor. And I think it's worth remembering the standard that this Court articulated in Doe v. Busbee, which is, as Your Honor alludes to, the diligence required for this type of case is the diligence of a reasonable person in Mr. Ila's circumstances. He's not, as Your Honor says, a lawyer. He proceeded pro se below. He's not trained in the law. So it's reasonable, as the Busbee Court determined, for someone in Mr. Ila's circumstances to rely on his lawyer to, when he says he's going to instruct, or I'm sorry, when he instructs Title VII claims, to rely on the lawyer to do so. There's no obligation, and this Court was clear about this in that Busbee case. There's no obligation for Mr. Ila to go back and cross the t's or dot the i's. He is entitled to rely on his experienced lawyer's advice. He did so to his detriment in this case, but that's not a ground for denying him equitable tolling. I'd only add, Your Honor, that, again, in the Busbee case, this Court established that where there may be holes or questions outstanding on the facts, that the appropriate procedure is to remand for further development and not to simply dismiss out of hand. Your Honor, my time is running short, so I'll only add on the exhaustion issue that, again, there are allegations in the complaint that more than establish that Dodders was well on notice of the Title VII claims to come and, in fact, was involved directly in the conduct that is described on the charge, including the retaliatory firing of Mr. Ila after he complained about his treatment at work. Thank you, Your Honors. Roberts. We've taken you to the end, but we will give you a minute to respond. Good morning, Your Honor. Josh Feldman on behalf of the Apelli Daughters of Charity Health System. May it please the Court, this is not a case in which Mr. Ila did not have the opportunity to plead equitable tolling. Quite the opposite. He had multiple opportunities to plead equitable tolling. Here, the district court properly granted the Daughters of Charity's motion to dismiss Mr. Ila's Second Amendment complaint after Mr. Ila repeatedly ---- I think the counsel has called him Mr. Ila. Ila. I apologize, Your Honor. Years of litigation and both names have been used. Ila, I apologize. However, the district court properly granted the dismissal of the Second Amendment complaint after Mr. Ila failed to prove reasonable diligence in extraordinary circumstances. So let's ---- I'm just looking at ER 85, that the key allegation in the complaint that your opposing counsel has focused this on. And why doesn't ---- why don't we have to construe that charitably to Mr. Ila? It says plaintiff instructed the lawyer to sue all entities, and that he emphasized that's the word used, Title VII claims. Why don't we have to construe that as Mr. Ila directed his lawyer to not only sue all entities, but to sue Title VII claims against them? And I understand the Court's point. Your Honor, that's the allegation in the complaint. We actually have evidence of the communication between his attorney because Mr. Ila attached the e-mail correspondence with his attorney at the time that he received his right to sue, and those directions are very clear. The e-mail reads, you will file a private Federal lawsuit 90 days per notice of right to sue, and or you will file a separate State civil lawsuit one year. I think that e-mail is illustrative and instructive as to the attorney conduct here. Well, why you're ---- I guess it would be if you're right in assuming that that e-mail communication is the sole source of the allegation in ER 85, and I ---- why should we assume that? All right. Maybe there were multiple oral communications. Maybe there were other e-mails that haven't been appended to the complaint. Well, Your Honor, I think the focus here has to be egregious attorney misconduct. And here this is a piece of the evidence, the record, that e-mail at excerpts of record 235. And we have to ---- for this Court to remand, the Court has to find extraordinary circumstances. And here you have at least one correspondence that gives his attorney the option of filing a State court lawsuit. So we respectfully submit that, you know, again, this is not extraordinary circumstances, egregious misconduct. The procedural posture of this case is a 12B6 motion. So don't we have to construe all allegations in favor of the plaintiff? That's right, Your Honor. It is a 12B6 motion, and the allegations do need to be construed in favor of the nonmoving party. Again, we believe the evidence, all the evidence, not just the excerpt of record at page 85, does not show egregious attorney misconduct. The other component that I'd like to address is the reasonable diligence. Your Honor, Mr. Elaw does not allege that when he discovered the alleged failure to assert the Title VII claims, and absent such an allegation or even a representation that he could make an allegation as to when he discovered it, this does not serve as a basis to toll the statute of limitations. This is relevant because he does not say when he learned of the failure to assert the Title VII claims, and the Court cannot assess whether he acted with due diligence. While his brief assumes that he acted with due diligence after the mediation, there's simply no allegations to confirm that Mr. Elaw was in fact unaware of the failure to assert the Title VII claims. Well, given that this is a pro se complaint, and given that we've got a very clear assertion in the complaint of this instruction to file a Title VII case, and we've got some holes, or maybe I'll say it, see, lacunae, but this is 12b-6. So maybe we need a little fact-finding. Well, if I may, and this is a court, this is something that the Court raised before. It was in a footnote in our replacement brief, because the issue came up later, which is the issue of collateral estoppel. If this Court denies the underlying dismissal of the Second Amendment complaint, that will not deny Mr. Elaw a hearing on the merits of his claim. The reality is, while this case was initially pending in the district court, Mr. Elaw filed on September 12th, 2011, a second State court action in the Superior Court of California, County of Santa Clara, for alleged wrongful termination violation of public policy. On December 20th, 2012, what was the case? Was that a Title VII or merely a State law claim? A State law claim, Your Honor. However, the issues, and this addresses the points that Your Honor made earlier, they're the same exact issues at play, namely, his alleged treatment prior to his termination and his termination. On December 20th. How do we know that? I mean, what documents can we look at? So, Your Honor, at the supplemental excerpt of record at pages 53 and 55, we attached Judge Patricia Lucas, the Superior Court judge at County of Santa Clara, the order granting Daughters of Charity's motion for summary judgment, which concluded that the evidence confirmed a legitimate, non-retaliatory and non-discriminatory reason for terminating Mr. Elaw, namely, that he was repeatedly insubordinate and refused to continue to work with his superiors, Mary Ellen Swigert and Sandra Korpis, and these are the same exact issues that will be at play if this Court remands to the district court, and we believe them to be moot. Has Mr. Elaw taken an appeal from that? He has not, Your Honor, and the time to appeal has since passed. And how do we know that? I don't have the rule in front of me, Your Honor, but this is over, this was almost two years ago, and no appeal has been made. No, no, I understand. You're telling me no appeal has been done. But I guess I'm just supposed to take your word for it. Your Honor, we don't, we haven't cited to the record the absence of an appeal. So again, with respect to issue, preclusion, claim, preclusion, we believe that if the Court is inclined to give Mr. Elaw another chance to argue the claim on its merits, again, we believe that issue is moot. Judge Patricia Lucas's order granting Daughters of Charity's summary judgment in the second state court action clearly finds in favor of Daughters of Charity. In sum, well, let me just address, if I may, Your Honor, the exhaustion issue. The one argument that counsel had brought up is anticipation. We respectfully submit the issue of anticipation would be hard to find in a case such as this where the plaintiff, Mr. Elaw, had filed a state court action, litigated that state court action, settled that state court action, subsequently repudiated the settlement agreement. And for Daughters of Charity Health System to somehow anticipate that he would later assert a Title VII claim really is difficult to imagine. If I may just, again, shift gears really quickly back to the issue of attorney misconduct and reasonable diligence, we believe the appropriate time period is 90 days. It's clear that he has 90 days to file a Title VII claim, and that is the area of inquiry. The case of Mendoza v. Lehigh Southwest Cement Company, although one of the – well, this Court's decision affirming the district court below, although unpublished, supports this requirement and is directly on point with the case at bar as the district court denied equitable tolling in a Title VII case as the plaintiff failed to plead extraordinary circumstances and reasonable diligence. In sum, we ask that the Court affirm the lower court's decision granting Daughters of Charity's Second Amendment complaint and the judgment in favor of Daughters of Charity Health System. If there are no further questions, Daughters would submit on its brief. Roberts. Thank you. Thank you. Mr. Lanham. Thank you, Your Honor, and I appreciate the minute. I have two brief answers. The first one is an issue raising a footnote in an opposition brief is not the way for this Court to decide whether there is an issue of preclusion in this case. Now, all I have is a two-page excerpt of record that my opponent cited. I'll note that that summary judgment order appears to concern a retaliation claim, whereas Mr. Ilah asserted claims for discrimination as well on his charge of discrimination that is the subject of this appeal. So it's not for – candidly, it's not for opposing counsel to simply assume that there's an overlap, a sufficient overlap for preclusion to apply in this appeal. Secondly, Your Honor, the diligence required, as I stated in my opening argument, is that of a reasonable person in the circumstances that he's under. In this case, Mr. Ilah sought a notice of sue from the EEOC when it became clear to him that there was a substantial backlog at that agency. He immediately hired an attorney, met with him the next day, made instructions about the nature of his case and the claims to assert, and then relied on that attorney's instructions. There was a gap in communication in the interim period, but when Mr. Ilah realized at some point that Title VII claims had been omitted, he promptly fired his attorney, noted that Title VII is what we had agreed, and then determined to proceed pro se and filed a voluminous complaint in the district court below. That's exactly the type of diligence that is reasonable for someone in Mr. Ilah's circumstances in his circumstances. If there's no further questions, that's all for me. Roberts. Okay, thank you very much. I just want to thank you and your firm, Covington & Burling, for you appearing here pro bono today. Thank you. Thank you, Your Honor. I appreciate that. I have the thanks of the judges here. Very nice briefing. This is not a comment on the merits on either side, but the work has been very good. Thank you, Your Honor. Ilah v. Daughters of Charity Health Systems, now submitted for decision.
judges: Wardlaw, Fletcher, Watford